UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JACINTO LADINO, *individually and on behalf of all others similarly situated*,

        Plaintiff,

    *v.*

THE RIDGEWOOD ALE HOUSE INC. d/b/a THE RIDGEWOOD ALE HOUSE and MARCOS CORDOVA, *individually*,

        Defendants,

---

THE RIDGEWOOD ALE HOUSE INC. d/b/a THE RIDGEWOOD ALE HOUSE and MARCOS CORDOVA, *individually*,

        Third-Party Plaintiffs,

    *v.*

LOUIE SELAMAJ, *individually*,

        Third-Party Defendant.

**ORDER**
21-CV-2449-ARR-SJB

---

**BULSARA, United States Magistrate Judge:**

    Plaintiff Jacinto Ladino ("Ladino") commenced this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") case against defendants The Ridgewood Ale House Inc. ("Ridgewood Ale House") and Marcos Cordova ("Cordova" and collectively, "Defendants") on May 3, 2021.  (Compl. dated May 3, 2021 ("Compl."), Dkt. No. 1).  Ladino has moved for conditional certification of a FLSA collective of all current and former kitchen workers employed by Defendants between May 3, 2018 and the present.  For the reasons stated below, the motion is denied.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ladino submits a single declaration—his own—in support of the motion. (Decl. of Jacinto Ladino dated Aug. 9, 2021 ("Ladino Decl."), Dkt. No. 30). The following facts are drawn from that declaration, the Complaint, and the declarations submitted by Defendants in opposition to the motion.

Ladino resides in Queens, New York. (Compl. ¶ 10). Cordova owns Ridgewood Ale House, a restaurant and bar located at 57-38 Myrtle Avenue in Queens. (*Id.* ¶¶ 3, 15, 17, 19–23; Ladino Decl. ¶ 6). From August 2015 to October 19, 2019, Ladino worked at Ridgewood Ale House in the kitchen, making pizzas and washing dishes. (Compl. ¶¶ 3, 11–12, 33; Ladino Decl. ¶ 1). Ladino states that seven employees, all of whom were Hispanic immigrants, worked in the kitchen for more than 50 hours a week. (Ladino Decl. ¶ 14).

Ladino contends that he never signed any documents setting his hourly or overtime wages. (*Id.* ¶ 2). He alleges that although he "always worked more than 40 hours each week," he "was paid a fixed weekly salary" of $700 from August 2015 to June 2017 and $800 from July 2017 through October 19, 2019, which "didn't include overtime." (*Id.* ¶ 5; *see also id.* ¶¶ 8–10). He says that during one workweek, "[g]enerally speaking," he put in 49 hours. (*Id.* ¶ 8). Ladino's salary was allegedly paid in cash and not accompanied by "any notation" of the salary or number of hours worked. (*Id.* ¶ 11). On multiple occasions when he complained to Cordova about his wages, Cordova said "you will get your raise soon[.]" (Ladino Decl. ¶ 7). Ladino alleges that Defendants failed to pay him earned and overtime wages, and failed to provide wage notices and wage statements. (Compl. ¶¶ 55–79; Ladino Decl. ¶¶ 4–5, 7, 11).

He also alleges that all kitchen workers were subject to these policies. (Ladino Decl. ¶ 15 ("I do not know how much each employee was paid specifically, but like myself they were paid a fixed weekly salary that did not include overtime.")). Ladino alleges there were "approximately 25 similarly situated current and former kitchen workers" during the relevant period. (Compl. ¶ 25). To demonstrate that the policies were common to other employees, Ladino alleges that he had conversations with two other kitchen workers. Jesus, with whom Ladino spoke "on several occasions, . . . . was in charge of packing the food" and said that he was paid half in cash and half by check. (Ladino Decl. ¶ 16). Jesus also told Ladino that he "always worked more than 50 hours a week" yet was not paid for overtime. (*Id.*). Defendants submitted a declaration by Jesus Ortiz ("Ortiz"), a former employee who Defendants contend was the only "Jesus" who worked at Ridgewood Ale House during Ladino's tenure. (Decl. of Jesus Ortiz dated Aug. 2021 ("Ortiz Decl."), attached as Ex. B to Decl. of Brett R. Gallaway in Supp. of Defs.' Opp'n dated Dec. 15, 2021 ("Gallaway Decl."), Dkt. No. 41; Defs.' Mem. of Law in Opp'n dated Dec. 15, 2021 ("Opp'n"), Dkt. No. 40 at 2 n.3). Ortiz states that he worked as a "pizza man" at Ridgewood Ale House from 2015 to 2020, and overlapped with Ladino. (Ortiz Decl. ¶¶ 1–2). Ortiz never saw Ladino work more than 40 hours per week despite "routinely work[ing] at the same time and in the vicinity" of Ladino. (*Id.* ¶¶ 2, 4). He also states that he "was always paid appropriately and in a timely manner," as were "to [his] knowledge, all of the employees[.]" (*Id.* ¶¶ 6–7). Ortiz indicates he was not given or promised anything of value in return for signing the declaration. (*Id.* ¶ 8).

Ladino separately alleges that Pedro, a cook and the other kitchen worker he spoke with, was paid in cash. (Ladino Decl. ¶ 17). Pedro worked similar hours as Ladino and did not receive overtime pay despite working "more than 40 hours a

3

week[.]" (*Id.* ¶ 18). Cordova, in a responsive declaration, states that he is "unfamiliar with any current or former employee named 'Pedro'" and that he "conducted a search of [his] company's records and spoke with all other current kitchen employees, and [they] did not find any records for any employee by the name of 'Pedro'" for the relevant period. (Decl. of Marcos Cordova dated Dec. 14, 2021, attached as Ex. A to Gallaway Decl. ¶ 3). "[N]or did any other kitchen employee recall someone by the name of 'Pedro' ever having worked as a cook[.]" (*Id.*)

Defendants also filed seven additional declarations from three current and four former employees. (Exs. C–I attached to Gallaway Decl.). The declarations are virtually identical and are all dated August 14, 2021. Each of these individuals states that they worked at Ridgewood Ale House for at least part of the time Ladino worked there and that Ladino did not work any overtime hours.[1] One of the individuals, Gatica, worked in the kitchen of Ridgewood Ale House. (Gatica Decl. ¶ 1). Gatica has been the kitchen chef from 2018 to present. (*Id.*). Dominguez (2017 to 2019), Fabiano (2018 to 2019), Moreno (2018 to 2021), and Salinas (2018 to present) worked as servers. (Dominguez Decl. ¶ 1; Fabiano Decl. ¶ 1; Moreno Decl. ¶ 1; Salinas Decl. ¶ 1). Rodolfo Cordova was a maintenance worker in 2019 and Campos has been an office administrator since 2015. (Rodolfo Cordova Decl. ¶ 1; Campos Decl. ¶ 1).

---

[1] Decl. of Kevin Dominguez dated Aug. 14, 2021 ("Dominguez Decl."), attached as Ex. C to Gallaway Decl. ¶ 2, 4; Decl. of Rodolfo Cordova dated Aug. 14, 2021 ("Rodolfo Cordova Decl."), attached as Ex. D to Gallaway Decl. ¶ 2, 4; Decl. of Sierra Rose Fabiano dated Aug. 14, 2021 ("Fabiano Decl."), attached as Ex. E to Gallaway Decl. ¶ 2, 4; Decl. of Silvia Campos dated Aug. 14, 2021 ("Campos Decl."), attached as Ex. F to Gallaway Decl. ¶ 2, 4; Decl. of Ginna Moreno dated Aug. 14, 2021 ("Moreno Decl."), attached as Ex. G to Gallaway Decl. ¶ 2, 4; Decl. of Ammy Salinas dated Aug. 14, 2021 ("Salinas Decl."), attached as Ex. H to Gallaway Decl. ¶ 2, 4; Decl. of Fernando Gatica dated Aug. 14, 2021 ("Gatica Decl."), attached as Ex. I to Gallaway Decl. ¶ 2, 4.

Each of these declarants states that Ridgewood Ale House employed two pizza makers so neither had to work overtime. (Gatica Decl. ¶ 3; *see also* Dominguez Decl. ¶ 3; Rodolfo Cordova Decl. ¶ 3; Fabiano Decl. ¶ 3; Campos Decl. ¶ 3; Moreno Decl. ¶ 3; Salinas Decl. ¶ 3; Ortiz Decl. ¶ 3). Each also says they were always timely paid appropriate wages and are not owed any additional wages, and that to their knowledge, the same is true for all other employees. (Dominguez Decl. ¶¶ 6–7; Rodolfo Cordova Decl. ¶¶ 6–7; Fabiano Decl. ¶¶ 6–7; Campos Decl. ¶¶ 6–7; Moreno Decl. ¶¶ 6–7; Salinas Decl. ¶¶ 6–7; Gatica Decl. ¶¶ 6–7). The seven add that they were not given or promised anything of value in return for signing their declarations. (Dominguez Decl. ¶ 8; Rodolfo Cordova Decl. ¶ 8; Fabiano Decl. ¶ 8; Campos Decl. ¶ 8; Moreno Decl. ¶ 8; Salinas Decl. ¶ 8; Gatica Decl. 8).

Ladino asserts five causes of action: one FLSA claim, for failure to pay overtime compensation, (Compl. ¶¶ 61–66), and four NYLL claims, for failure to pay earned wages, pay overtime wages, and provide accurate wage notices and statements. (*Id.* ¶¶ 55–60, 67–79). Ladino moved for conditional certification of a collective pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of all kitchen workers employed by Defendants within three years of the filing of the Complaint. (Notice of Pl.'s Mot. dated Sept. 11, 2021 ("Notice of Mot."), Dkt. 27; Compl. ¶ 24).

Because of the impleading of a third-party defendant, Louie Selamaj ("Selamaj"), the Court stayed briefing on this motion. (Order dated Sept. 22, 2021). Selamaj, Defendants allege in their Third-Party Complaint, was the operator and sole owner of Ridgewood Ale House until April 26, 2019. (Third-Party Compl. dated Sept. 9, 2021, Dkt. No. 33 ¶¶ 4, 13–15). According to Defendants, Ladino worked at Ridgewood Ale House under Selamaj for about 44 months of his approximately 50 months of

5

employment there. (*Id.* ¶ 15). Defendants allege that Cordova bought Ridgewood Ale House from Selamaj, who made representations that no conditions existed that would expose Cordova to liability. (*Id.* ¶ 16).

Following Selamaj's appearance, Defendants filed their opposition on December 15, 2021. (Opp'n). Selamaj did not oppose the motion. Ladino filed a reply brief on December 17, 2021. (Reply in Supp. dated Dec. 16, 2021 ("Reply"), Dkt. No. 42).

## DISCUSSION

FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The statute requires employers to pay employees an overtime rate for time worked in excess of 40 hours in a given workweek of "not less than one and one-half times the regular rate at which [they are] employed." *Id.* § 207. Section 216(b) of FLSA provides a private right of action to an employee to recover overtime compensation from an employer who violates the Act's provisions. The same section permits plaintiffs to have their case certified as a collective action on behalf of "themselves and other employees similarly situated." *Id.* § 216(b). Unlike Rule 23 class actions, a collective action is "opt in," meaning, to join the suit, a person must "give[ ] his consent in writing to become such a party" and file that "consent in the court in which such action is brought." *Id.*

Courts engage in a two-stage inquiry to determine whether to grant a motion to certify a FLSA collective. *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010) ("[T]he district courts of this Circuit appear to have coalesced around a two-step method[.]") (footnote omitted); *see, e.g.*, *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010); *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).

6

"The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). "[T]he purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.*

At this first step of this process, Ladino's burden is minimal, but he must still make a "modest factual showing" that he and fellow employees were "victims of a common policy or plan that violated the law." *Id.* (quoting *Sbarro, Inc.*, 982 F. Supp. at 261). Key to this showing is whether the plaintiff "provide[s] actual evidence of a factual nexus between their situation and those that they claim are similarly situated rather than mere conclusory allegations." *Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014); *accord Myers*, 624 F.3d at 555. This first stage determination is based on the pleadings, affidavits and declarations[.]" *Bifulco*, 262 F.R.D. at 212 (alteration in original) (quoting *Hens v. Client Logic Operating Corp.*, No. 05-CV-381, 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 26, 2006)); *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, [and] declarations, or the affidavits and declarations of other potential class members."). At the conditional certification stage, "the burden is so low that even one or two affidavits establishing the common plan may suffice." *Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445–46 (S.D.N.Y. 2013).

For example, courts in this Circuit have conditionally certified FLSA collectives based only on a plaintiff's detailed affidavit about his working conditions and those of his colleagues. *Miranda v. Gen. Auto Body Works, Inc.*, No. 17-CV-4116, 2017 WL 4712218, at *2 (E.D.N.Y. Oct. 18, 2017) ("[T]here are numerous examples of courts in this Circuit granting conditional certification based on the pleadings and a single affidavit by the plaintiff."); *Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (same) (collecting cases); *see also Ke v. JR Sushi 2 Inc.*, No. 19-CV-7332, 2021 WL 148751, at *8 (S.D.N.Y. Jan. 15, 2021) (certifying collective based on plaintiff's two affidavits that "adequately described conversations with other employees of JR Sushi concerning their wages"), *aff'd*, 2021 WL 465359 (Feb. 9, 2021).

In contrast, courts have denied conditional certification where a plaintiff makes only conclusory allegations about his workplace and fails to present any specific evidence of a common policy of wage-and-hour violations. The inquiry "cannot be satisfied simply by 'unsupported assertions[.]'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)). *See, e.g., Yang v. Zhou's Yummy Rest., Inc.*, No. 19-CV-5203, 2020 WL 2738403, at *3 (E.D.N.Y. Apr. 28, 2020) ("Yang's single affidavit is filled with conclusory allegations that generally state he became familiar with a number of employees and their monthly salaries by 'chatting' with them. Despite 'chatting' with these employees, and working with them for years, he does not know the first names of six of the nine employees he spoke with; for one he provides only the title of his position. No information is provided as to when or where these conversations took place during Yang's many years of employment. Because 'the Court does not know where or when these observations or conversations occurred,

8

which is critical in order for the Court to determine the appropriate scope of the proposed [collective] . . . and notice process,' certification is not possible.") (alterations in original) (citations omitted) (quoting *Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV-7264, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014)); *Joshi v. Flagship S B Amsterdam NY, LLC*, No. 17-CV-5785, 2018 WL 1135566, at *4 (S.D.N.Y. Mar. 1, 2018) (denying certification where plaintiff "merely asserts in generalized terms that he observed other employees at work and had several conversations with other employees about their compensation"); *Mata v. Foodbridge LLC*, No. 14-CV-8754, 2015 WL 3457293, at *10 (S.D.N.Y. June 1, 2015) ("[W]hile his declaration lists the names and titles of seventeen coworkers—including food preparers, pizza men, counter persons, a cook, a grill man, a juice preparer, a porter, a delivery person, a dishwasher, and a panini preparer—who he ostensibly observed doing work the same or similar to his own . . . , he includes no concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions.") (citation omitted). "The absence of factual support regarding similarly situated potential plaintiffs is particularly relevant when plaintiff has had the benefit of some discovery." *Gu*, 2014 WL 1515877, at *4.

Even with the benefit of discovery,[2] Ladino has not made the modest factual showing necessary to demonstrate he and any other employees were victims of a common policy or plan that violated FLSA. He makes generic, conclusory assertions that are insufficient to warrant certification of a collective.

---

[2] Ladino has had ample time to engage in discovery. He commenced the case on May 3, 2021 and filed the present motion more than four months later, on September 11, 2021. And while the motion was stayed for some period, discovery was not.

9

Ladino alleges that "virtually all" of the kitchen workers "were also Hispanic immigrants" and that "Cordova took advantage of Hispanic immigrants by not paying [them] for all the hours worked," who like himself "were paid a fixed weekly salary that did not include overtime." (Ladino Decl. ¶¶ 12–15). In support of this allegation, he refers to the employees Jesus and Pedro, but provides scant information about them.

"Jesus was in charge of packing the food" and told Ladino he "worked more than 50 hours a week" without receiving overtime pay, (*id.* ¶ 16), but Ladino does not provide Jesus's last name; specifics regarding how many hours he worked; his wages received; when he worked for Defendants and whether that overlapped with the relevant period; the dates or locations of any of their "several" conversations; or how paying Jesus half in check and half in cash helped Defendants avoid paying overtime (as opposed to avoiding employer tax obligations). As for Pedro, Ladino states that he was always paid in cash and worked "more than 40 hours a week" as part of a "similar schedule" to Ladino but complained that he did not receive overtime. (*Id.* ¶¶ 17–18). Like for Jesus, Ladino does not offer Pedro's last name or any of the other details that are lacking with respect to Jesus. Furthermore, Ladino states that Pedro worked more than 40 hours per week even though "all of" the kitchen workers "worked more than 50 hours a week," and does not explain this discrepancy. (*Id.* ¶¶ 14, 18).

Without such details—which can be in a single affidavit and omit the last name of other employees—even the low bar for certification is not met.[3] *Benavides v. Serenity*

---

[3] Ladino contends that the "happy camper" declarations from the current and former employees that Defendants filed "should not be considered by the Court." Reply at 1–2; *see also* Exs. C–I attached to Gallaway Decl. However, Ladino's motion would fail regardless of these declarations because, as explained herein, Ladino fails to make the "modest factual showing" needed for conditional certification to be granted.

*Spa NY Inc.*, 166 F. Supp. 3d 474, 481–82 (S.D.N.Y. 2016) ("When plaintiffs base their assertions regarding similarly situated employees upon their own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of the employees involved."); *Mata*, 2015 WL 3457293, at *4 (noting that details as to observations and conversations with other employees "are particularly important where a conditional certification motion is based on the lone affidavit of a single employee, who performed a single job function"); *Reyes Cruz v. 70-30 Austin St. Bakery Inc.*, No. 18-CV-7408, 2019 WL 1929910, at *6 (S.D.N.Y. May 1, 2019) (denying collective certification where motion was based on a single affidavit that stated generally that plaintiff spoke with other employees but "d[id] not describe where or when these discussions took place, what the other employees were paid, what specific hours they worked or any other underlying details and offer[ed] only the conclusory assertion that the other employees were not paid overtime"); *Joshi*, 2018 WL 1135566, at *4 (rejecting collective certification where plaintiff's affidavit "only vaguely describe[d] conversations with other wait staff about their 'work and pay' and [he] conclude[d] based on his 'experience' and these 'conversations' that other employees were not paid an overtime premium").

There is a separate and additional fatal flaw in Ladino's motion.  To obtain certification, it is not sufficient to demonstrate that other employees were subject to any common policy.  He must demonstrate that the other employees were subject to a common policy *that violated the law*.  He is unable to do so.

Although Ladino's Complaint contains an earned wages claim, any collective, at best, would be composed solely of employees with overtime claims.  Ladino's

11

conversations with Jesus and Pedro relate only to not being paid overtime. (Ladino Decl. ¶ 16 ("Jesus further complained to me that even though he always worked more than 50 hours a week, he was not paid overtime."); *id.* ¶ 18 ("Pedro also told me that even though he worked more than 40 hours a week, he knew he was not getting overtime pay and it upset him.")). These vague statements are not sufficient to establish an overtime violation.

To state an overtime claim under FLSA, a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (FLSA). In *Lundy*, the Second Circuit articulated "the degree of specificity needed to state an overtime claim under FLSA." 711 F.3d at 114. It concluded that a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Id.* Or put differently, a plaintiff must allege that in at least one workweek he or she worked at least 40 hours, and also worked some uncompensated time in that week in excess of the 40 hours. *See id.* An overtime claim fails to satisfy this requirement if it generally alleges that the plaintiff was not paid for overtime hours worked. *See Nakahata v. N.Y.-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). The "requirement that plaintiffs must allege overtime without compensation in a 'given' workweek was not an invitation to provide an all-purpose pleading template alleging overtime in 'some or all workweeks.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (quoting *Lundy*, 711 F.3d at 114). Nor is it acceptable for a plaintiff to just "track[ ] the statutory language of the FLSA . . . but alleg[e] no particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Id.* at 89.

If Pedro or Jesus had brought their own lawsuits, their sparse statements—that Jesus "worked more than 50 hours a week" and that Pedro "worked more than 40 hours a week" without any other information, including a specific week in which either worked overtime—would result in their overtime claims being dismissed. *See Marte v. Westbury Mini Mart, Inc.*, No. CV 16-53, 2017 WL 9485667, at *3 (E.D.N.Y. Jan. 18, 2017) ("Plaintiffs' blanket allegations of working sixty hours over six straight days, with no details as to the hours, days or weeks worked, are insufficient to state a claim for failure to pay overtime 'in a given workweek.'") (quoting *Lundy*, 711 F.3d at 114), *report and recommendation adopted*, 2017 WL 838194, at *2 (Mar. 3, 2017); *Ayala v. Looks Great Servs., Inc.*, No. 14-CV-6035, 2015 WL 4509133, at *6–*9 (E.D.N.Y. July 23, 2015) (dismissing FLSA overtime claim on behalf of putative FLSA collective where amended complaint "track[ed] the statutory language of the FLSA" and did "not estimate the number of overtime hours the Plaintiffs worked in any of or all the weeks they were employed"); *Nardiello v. Maureen's Kitchen, Inc.*, No. 14-CV-4070, 2015 WL 1223804, at *3 (E.D.N.Y. Mar. 17, 2015) (collecting cases) ("Plaintiffs allege that they were required to work on one of four available shifts during their employment, which ran from 6 am to 3:30 pm, and that they therefore . . . regularly worked more than 40 hours per week. However, the Complaint never actually alleges how many days per week, for any week, each Plaintiff worked. Without this basic information, the Complaint fails to adequately allege that Plaintiffs worked in excess of forty hours per week in any given week.") (ellipsis in original) (quotations and internal citations omitted). They cannot now backdoor their way into an overtime case by latching onto the claims of another employee, Ladino, who essentially proceeds to state a legally insufficient claim on their behalf.

13

This is not just a passing pleading deficiency. Here, there is serious doubt that even Ladino has an overtime claim. The deficits of information about Pedro's and Jesus's work—including when they worked for Defendants—create serious doubt that they too have an overtime claim and make it impossible to certify a collective. Based on his alleged 49-hour workweek,[4] Ladino appears not to have been denied overtime compensation for most of the time he worked for Defendants. For example, in 2017, the minimum wage for New York City employers with 11 or more employees was $13.00 per hour. *See* NYLL § 652(1)(a). Ladino would have been entitled to $520.00 for the first 40 hours he worked and $175.50 for the 9 overtime hours, for a total of $695.50—less than the $700 weekly salary he actually received. Only beginning on December 31, 2018, when the minimum wage rose to $15.00 per hour for these employers, *id.*, would Ladino have been entitled to earn more than the wages he received for a 49-hour workweek. And, thus, he would only have an overtime claim for 2019—the last 10 months of his employment. Ladino's declaration provides no dates for Pedro's or Jesus's employment, and therefore they—despite their alleged protests to the contrary—may not have a viable overtime claim. On the other hand, if there were an identifiable week in which Pedro or Jesus worked more than 40 hours, and there were some indications of the amount they were paid that week, the Court could potentially find an overtime violation. But instead of filling in this gap, Ladino's declaration amplifies the lacuna; he says he does "not know how much each employee was paid[.]" (Ladino Decl.

---

[4] In his declaration, Ladino provides an example of a workweek in which he worked from 6:00 P.M. to 1:00 A.M. from Monday through Wednesday, from 6:00 P.M. to 2:00 A.M. on Thursday, and from 6:00 P.M. to 4:00 A.M. on Friday and Saturday. *See* Ladino Decl. ¶ 8. In other words, he worked 7 hours each day Monday through Wednesday, 8 hours on Thursday, and 10 hours each on Friday and Saturday, for a total of 49 hours.

14

¶ 15). Because there is no evidence that there were other employees subject to an unlawful policy, a collective cannot be certified.

## CONCLUSION

For the reasons stated above, Ladino's motion to conditionally certify a FLSA collective is denied.

SO ORDERED.

/s/ *Sanket J. Bulsara*  4/14/2022
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York