UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                         :

JACINTO LADINO,                       :

               Plaintiff,         :        21-CV-2449-ARR-SJB

                       :
     -against-              :       <u>NOT FOR ELECTRONIC OR</u>
                       :       <u>PRINT PUBLICATION</u>

MARCOS CORDOVA and THE RIDGEWOOD ALE  :       **OPINION & ORDER**
HOUSE INC.,                   :

              Defendants.     :

                       :
---------------------------------------------------------------- X
MARCOS CORDOVA and THE RIDGEWOOD ALE  :
HOUSE INC.,                   :

            Third-Party Plaintiffs,   :

     -against-            :

LOUIE SELAMAJ,               :

            Third-Party Defendant.  :
                       X
----------------------------------------------------------------

ROSS, United States District Judge:

     The Ridgewood Ale House Inc. ("Ridgewood"), Marcos Cordova (together, "Ridgewood

defendants") and third-party defendant Louie Selamaj (collectively, "defendants") jointly move

for summary judgment on all claims of plaintiff Jacinto Ladino. The parties also move for sanctions

relating to opposing counsel's conduct in this case. For the reasons set forth in this opinion, the

motion for summary judgment is denied. I address the sanctions motions separately at the end of

this opinion.

# BACKGROUND

### Sources of Factual History

The following facts are taken from the parties' filings, depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts. *See Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Citations to a party's 56.1 statement incorporate the evidentiary materials cited therein.

Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any evidence in the record to contradict it. *See* E.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id*. Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

### Relevant Facts

Plaintiff worked as a pizza-maker at Ridgewood from approximately August 2015 to October 19, 2019. *See* Defs.' 56.1 Statement in Supp. Mot. for Summ. J. ¶ 1 ("Defs.' 56.1"), ECF No. 87. Cordova and Selamaj jointly owned Ridgewood until April 26, 2019, when Cordova purchased Selamaj's 50% ownership stake and became the sole owner and operator of Ridgewood. *Id.* ¶ 2. Plaintiff alleges that he worked more than 40 hours per week throughout his employment but was not paid overtime for the time worked beyond 40 hours. *See* Compl. ¶¶ 34–35, ECF No. 1. Plaintiff brings claims for violations of the Fair Labor Standards Act ("FLSA") overtime requirements and violations of the New York Labor Law ("NYLL"). *See generally id.* ¶¶ 55–79.

Plaintiff disputes defendants' assertions regarding, *inter alia*, his job duties, *see* Pl.'s 56.1 Statement in Opp'n Mot. for Summ. J. ¶¶ 1, 5 ("Pl.'s 56.1"), ECF No. 91, his alleged failure to

complain to either Cordova or Selamaj concerning defendants' failure to pay overtime, *id.* ¶¶ 9–11, whether he entered his hours worked into a logbook, *id.* ¶ 12, and Ridgewood's hours of operation, *id.* ¶ 14.

There is no documentary evidence before me concerning plaintiff's hours worked. In support of the motion for summary judgment, defendants have submitted only excerpts of Cordova and Selamaj's depositions, a screenshot of Ridgewood's website showing its hours of operation, excerpts of plaintiff's deposition, and a declaration filed by plaintiff in support of his prior motion to certify a collective action. *See* ECF Nos. 87-1–87-5. Plaintiff testified that he was scheduled to work approximately 60 hours per week. *See* Ladino Dep. Tr. 54:19–56:8, ECF No. 87-1 (testifying that his hours were 11 a.m. to 2 a.m. on Mondays, 6 p.m. to 2 a.m. on Tuesdays and Wednesdays, 6 p.m. to 3 a.m. on Thursdays, and 6 p.m. to 4:30 a.m. on Fridays and Saturdays). Cordova testified that Ladino would have worked between 30 and 35 hours per week, while Selamaj did not recall Ladino's schedule. *See* Cordova Dep. Tr. 83:15–19, ECF No. 87-3 ("We have two pizza makers in the restaurant and I know his [*i.e.*, Ladino's] hours were less than 40, and he has a fixed rate of pay for less than – for 30 to 35 hours a week."); Selamaj Dep. Tr. 104:5–8, ECF No. 87-4 (testifying that "if someone was entitled to overtime, they would get paid time-and-a-half for their hourly rate"). Ridgewood's website reflects that its hours are 12 p.m. to 11 p.m. Monday through Thursday, 11 a.m. to 1 a.m. Friday through Saturday, and 11 a.m. to 10 p.m. on Sunday. *See* ECF No. 87-5.

In discovery, plaintiff requested his time records from both the Ridgewood defendants and Selamaj, but neither produced them. *See* ECF No. 91-4, at 5 (Ridgewood defendants' response to plaintiff's Document Request No. 4 representing that "[d]efendants will produce responsive documents [to the request for records reflecting hours worked], if any are in their possession or

3

control, after conducting an exhaustive search"); ECF No. 91-6, at 6 (Selamaj's response to plaintiff's Document Request No. 4 representing that no time records were in his possession, custody or control but that he would "conduct[] an exhaustive search . . . [for] responsive documents in his custody or control that were and should have been left at the business address of" the Ridgewood defendants).

## LEGAL STANDARD

### *Summary Judgment*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court at this juncture is not to resolve disputed issues but rather to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. *Id.* at 255 (citation omitted). "In reviewing the evidence and the inferences that may reasonably be drawn, [I] may not make credibility determinations or weigh the evidence. . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (omission in original) (citations and internal quotation marks omitted). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, . . . materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (alteration in original) (quotation omitted).

Once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). The moving party "may obtain summary judgment by showing that little or no [admissible] evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994); Fed. R. Civ. P. 56(c)(1)(B). The nonmovant "may not survive summary judgment merely by conjuring a hypothetical issue of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015). In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts[] and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations and internal quotation marks omitted).

***The FLSA***

Section 207 of the FLSA requires that an employer pay an employee overtime compensation "at a rate not less than one and one-half times the regular rate" of that employee's compensation where that employee is employed "for a workweek longer than forty hours," unless that employee is exempt from the FLSA. *See* 29 U.S.C. § 207(a)(1).

## DISCUSSION

### I.   A Material Dispute of Fact Exists as to Plaintiff's Hours Worked

Defendants first argue that plaintiff has failed to identify the particular days and weeks he worked more than 40 hours. *See* Defs.' Mem. in Supp. Mot. for Summ. J. 3 ("Defs.' Mem."), ECF No. 88. Defendants contend that plaintiff did not "make factually sufficient and thus, plausible allegations, . . . [and] falls short of the minimum standards to bring an FLSA action." Defs.' Mem. 7. In order to plead an FLSA overtime claim, "a plaintiff must sufficiently allege 40 hours of work

5

in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Defendants do not explain why I should consider the legal sufficiency of plaintiff's complaint at this stage of the proceedings. A motion to dismiss on the grounds of failure to state a claim upon which relief can be granted must be filed "before pleading if a responsive pleading is allowed," and defendants filed an answer in this case. Fed. R. Civ. P. 12(b); *see* ECF Nos. 16, 36. Even if I could rule on the sufficiency of the Complaint, plaintiff adequately pleaded that his weekly schedule was 49 hours per week, and that he was never paid overtime compensation. *Compare* Compl. ¶¶ 35–36, 42–44 (alleging 49 scheduled hours per week and that "[t]hroughout his employment with [d]efendants, [p]laintiff was not paid overtime") *with Lundy*, 711 F.3d at 114–115 (finding pleading deficiency where employee alleged typical weekly schedule totaling 37.5 hours but that she "occasionally" worked more, missed lunch breaks, worked uncompensated time, and had sporadic training or meetings outside of her scheduled hours). Instead of considering the sufficiency of the complaint, I am required to consider whether there is a material dispute of fact based on the evidence. *See* Fed. R. Civ. P. 56(a), (c).

Defendants next argue that plaintiff has failed to adduce evidence showing when and how long he performed overtime work. Defs.' Mem. 8. Defendants argue that "[p]laintiff has not provided records of the time he claims to have worked such as copies of notes in a note book, messages kept on his phone, letters or even emails or text messages to [d]efendants." *Id.* The only evidence supporting plaintiff's position that he worked more than forty hours per week is his own testimony, as well as his sworn declaration from the motion for collective certification.

The Supreme Court discussed this scenario in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). Although the Court recognized that an employee alleging damages under the

FLSA "has the burden of proving that he performed work for which he was not properly compensated," it warned against "making that burden an impossible hurdle for the employee." 328 U.S. at 687. Because the FLSA imposes a duty upon employers to retain "proper records of wages, hours and other conditions and practices of employment" and because these individuals are "in position to know and to produce the most probative facts concerning the nature and amount of work performed," all that is required of an employee is that he "produces sufficient evidence to show the amount and extent of [his] work as a matter of just and reasonable inference." *Id.* To require an employee to produce documentary evidence of the hours worked would "penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work" and would "place a premium on an employer's failure to keep proper records in conformity with his statutory duty." *Id.* Accordingly, once the plaintiff presents sufficient evidence to show the amount and extent of their work, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88.

A plaintiff's "burden under *Anderson* is . . . not onerous" and courts have regularly found this burden met where the plaintiff testifies as to their hours worked or provides a sworn declaration. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 364 (2d Cir. 2011); *see, e.g.*, *id.* (plaintiff's declaration estimating amount of uncompensated overtime per week and describing method for "shaving" hours sufficient for reasonable jury to conclude he showed the amount of uncompensated work "as a matter of just and reasonable inference"); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (Secretary of Labor's burden established by testimony of representative sample of employees); *Jemine v. Dennis*, 901 F. Supp.2d 365, 377

(E.D.N.Y. 2012) (*Anderson* burden met by plaintiffs who relied on their declarations, deposition testimonies, and partially incomplete payroll and timesheet records); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *9 (E.D.N.Y. Mar. 29, 2022) (burden met although plaintiff could not "remember the precise day her employment began" or "specifically remember the estimated 200 days she worked late, and the specific amounts of overtime on each of those days").

Plaintiff has met his burden under *Anderson* in this case through his deposition testimony and declaration setting forth his approximate hours worked. The burden therefore shifts to defendants to either identify "the precise amount of work performed" or "produce evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88. Defendants present two arguments. First, they contend that, at least "while [Selamaj] was part owner of Ridgewood, employees were required to enter their hours into a log book" and that "[p]laintiff did not testify to any such entries regarding his claimed overtime." Defs.' Mem. 8. Second, they contend that Ladino's "memory cannot be trusted," citing inconsistencies in his deposition testimony and his testimony that the declaration was inaccurate, and that his testimony conflicts with Ridgewood's hours of operation. *Id.* at 8–9, 11.

As to the first argument, defendants attempt to have it both ways. By arguing that a logbook of employee hours existed and that Ladino did not reference or otherwise produce it, defendants imply that documentary evidence contradicts plaintiff's recollection of his hours worked. However, *defendants* failed to produce this evidence. Although plaintiff demanded his time records from both the Ridgewood defendants and Selamaj, there are no logbook entries, timesheets, or pay stubs in the record. *See* ECF No. 91-4, at 5 (Ridgewood defendants' response); ECF No. 91-6, at 6 (Selamaj's response). Defendants' attempt to satisfy their burden under

*Anderson* by pointing to their recollections that documents exist proving their assertions, but not to the documents themselves, is rejected.

As to the second, I agree that plaintiff's recollection of his hours and his other sworn statements in this case are inconsistent. *Compare* Ladino Dep. Tr. 54:19–56:8 (describing schedule of approximately 60 hours per week) *with* Ladino Decl. ¶ 8, ECF No. 87-2 (describing schedule of approximately 49 hours per week). Also countering plaintiff's recollection is that both Cordova and Selamaj testified that scheduling an employee to work more than 40 hours per week would not have been their practice, although Selamaj could not recall plaintiff's hours with specificity. The parties dispute whether or not I may take judicial notice of the public hours of operation of Ridgewood pursuant to Federal Rule of Evidence 201. Plaintiff notes that "the website in question is [Ridgewood's] website which is controlled by [d]efendants . . . [and] at any given time [d]efendants could have changed the hours listed on their website to their benefit." Pl.'s Mem. in Opp'n Mot. for Summ. J. 7 ("Pl.'s Opp'n"), ECF No. 92. I am skeptical that it would be to defendants' benefit to change the hours of operation on Ridgewood's website merely to gain an advantage in this litigation. However, the flaw with defendants' relying upon the website is not that it is an inaccurate statement of the hours of Ridgewood's operation, but that the hours of public operation need not align with the hours worked by plaintiff. It is entirely possible that plaintiff worked before or after Ridgewood was open to the public. Accordingly, even if I were to treat the website as evidence of plaintiff's schedule, it would not dispositively prove that he worked fewer than 40 hours per week.

There is a material dispute of fact as to the hours worked by plaintiff throughout his employment, and accordingly I cannot grant summary judgment for either party as to the FLSA claim. Defendants' evidence and citation to inconsistencies in plaintiff's testimony raises factual

and credibility questions for trial, but does not entitle them to judgment as a matter of law in light of Ladino's testimony. *See Kuebel*, 643 F.3d at 365 (reversing grant of summary judgment where former employee testified to working more than 40 hours per week and defendants produced documents challenging credibility); *Jemine*, 901 F. Supp. 2d at 378 (finding that "deviation from [plaintiffs'] respective original declarations only indicates that plaintiffs could not recall with certainty their hours worked"); *see also Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (granting summary judgment to defendants where plaintiffs' recollection was contradicted by "record-keeping [that] complied with the requirements of the FLSA and New York Labor Law").

## II.    A Material Dispute of Fact Exists as to Defendants' Knowledge

Defendants also contend that plaintiff has not proved that they had knowledge of his overtime work. Defs.' Mem. 12. "[A]n employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits this work." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008). Such knowledge may be actual or constructive and need not be obtained concurrently with the overtime. *Id.* An employer with knowledge that an employee is working who does not wish the work to be done "has a duty to make every effort to prevent its performance," a duty that continues "even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Id.* at 288. Plaintiff testified that he made "[o]ne, two, maybe three" complaints to Selamaj and Cordova about his compensation, but that he did not recall when these complaints were made. Ladino Dep. Tr. 76:11–77:17. Cordova testified that he did not recall receiving complaints from Ladino relating to overtime. Cordova Dep. Tr. 178:20–179:2. As with the issue of plaintiff's hours, it is clear that there is a factual dispute as to whether or not defendants had notice that plaintiff was working hours entitling him to overtime compensation.

Accordingly, I decline to grant summary judgment to defendants on these grounds.

### III.   Summary Judgment for Work Prior to December 31, 2018 Is Denied

Defendants encourage me to adopt Magistrate Judge Bulsara's reasoning in his opinion denying plaintiff's motion for collective certification, which noted that there was "serious doubt that even Ladino has an overtime claim." Apr. 14, 2022 Op. & Order 14 ("Collective Certification Op."), ECF No. 63. Judge Bulsara calculated that, based on plaintiff's alleged fixed weekly salary of $800 from July 2017, plaintiff was paid a sum that would account for overtime until the prevailing minimum wage rose to $15.00 per hour on December 31, 2018. *See* Defs.' Mem. 13–14 (citing Collective Certification Op. 14). Plaintiff notes that Judge Bulsara's opinion is not binding and contends that Judge Bulsara inappropriately assumed that plaintiff's weekly salary was intended by the parties to fully include overtime payments. Pl.'s Opp'n 2–3. As an initial matter, Judge Bulsara's analysis was not a conclusive determination on the validity of plaintiff's claims from June 2017 to December 18, 2018. Rather, Judge Bulsara used plaintiff's declaration to illustrate why he could not certify a collective action without more direct evidence from other employees—Ladino himself did not know the hours worked or wages received by potential members of the collective, and Judge Bulsara found that plaintiff's alleged schedule was insufficient to support the inference that *other* employees were also improperly denied overtime. *See* Collective Certification Op. 13–15.

Judge Bulsara's analysis assumed that plaintiff and defendants intended plaintiff's weekly salary to cover *both* regular and overtime pay and that the $800 payment was not intended to cover merely the first 40 hours worked. In other words, Judge Bulsara assumed for his analysis that plaintiff's hourly wage was the then-prevailing minimum wage of $13 per hour, and not $20 per hour for the first 40 hours. In the former scenario, a $800 weekly salary would be enough to cover both base and overtime pay based on a 49-hour workweek. *See id.* at 14. Defendants argue that I

11

should adopt this assumption on summary judgment.

"[I]f [a salary] was properly intended by the parties to account for both a regular rate and an overtime rate, the contemplated arrangement is in compliance with the FLSA" as long as the effective hourly rate of the arrangement exceeds the minimum wage. *Adams v. Dep't of Juvenile Just.*, 143 F.3d 61, 67 (2d Cir. 1998). "Unless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours." *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999) (collecting cases); *see also Draskovic v. Oneota Assocs., LLC*, No. 17-CV-5085 (ARR) (JO), 2019 WL 783033, at *12 (E.D.N.Y. Feb. 21, 2019) (calculating "regular rate" of $9.19 per hour based on twice-monthly payments of $398.33 per month where record was clear compensation was intended to cover a 20-hour workweek).

There is no evidence in the record suggesting whether the parties intended Ladino's weekly salary to cover merely the first 40 hours of his work or to include overtime hours. Neither party has produced any written agreement, and the parties dispute whether plaintiff *ever* worked more than 40 hours per week. Because there is no evidence to suggest that plaintiff's weekly salary was intended to account for both a regular rate and overtime rate, I decline to grant summary judgment on this basis.

## IV.   Plaintiff has Clarified that He Does Not Seek "Straight Time" or "Gap Time" Pay

Defendants, relying on statements made by plaintiff during his deposition, contend that Ladino's case is truly about recovering pay for the hours worked during the last three weeks of his employment at Ridgewood, *i.e.*, pay at his regular rate. *See* Defs.' Mem. 14–15. Plaintiff has clarified that he is not seeking recovery of his regular pay. Pl.'s Opp'n 8–9. Accordingly, I will

not grant summary judgment on the basis that plaintiff is seeking "gap time."

## THE MOTIONS FOR SANCTIONS AND COUNSEL'S CONDUCT

It is clear from the record in this case that plaintiff's counsel and the Ridgewood defendants' counsel have engaged in a course of highly unprofessional, inappropriate conduct that has caused the parties and the Court to waste significant resources. I will first address the parties' motions for sanctions, then counsel's conduct.

### *The Sanctions Motions*

Defendants move for sanctions against plaintiff's counsel on the ground that he "coach[ed]" his client during plaintiff's deposition (conducted via videoconference), purportedly while questions were pending. Defs.' Mem. 16. During the deposition, plaintiff and plaintiff's counsel, who were in the same room, turned off their computer's camera and microphone, conversed, and returned, after which "[p]laintiff's responses to the pending questions, surprisingly, were no[] longer as damaging to his claims." *Id.* Defendants also complain that plaintiff's counsel disclosed, "five hours into plaintiff's examination[,] that a person not visible on camera[] had been in the room with himself and plaintiff during the entire deposition." *Id.* at 17. Defendants seek an adverse inference for this "coached" testimony. *Id.* Defendants also contend a number of discovery motions filed by plaintiff's counsel were "frivolous" and suggest that "[p]laintiff's counsel has brought and litigated this action in bad faith in a manner contrary to the interests of [p]laintiff." *Id.* at 18.

Plaintiff seeks sanctions in connection with the costs of defending the sanctions motion, contending that Judge Bulsara previously denied a motion based on the same conduct. *See* Pl.'s Opp'n 10.

I have reviewed the portions of Mr. Ladino's deposition transcript cited by defendants. In each instance, it is clear that no question was pending when plaintiff's counsel took a break.

However, in some instances, defense counsel was in the middle of a *line* of questioning. For example, plaintiff's counsel took a break immediately after his client began answering a line of questions concerning his responses to defendants' interrogatories and document requests. *See* Ladino Dep. Tr. 37:11–20 ("[QUESTION]: Do you understand that you were served with what is called Interrogatories and Document Requests, that is legal jargon for questions and requests for the production of documents relevant to your claims in this case. You understand that; right? [ANSWER]: Yes. [PLAINTIFF'S COUNSEL]: I need to take a five-minute break."). When plaintiff's counsel reappeared, plaintiff confirmed that he and his counsel spoke and plaintiff's counsel asserted a privilege objection when defense counsel asked the subject of the conversation. *See id.* 38:22–39:4. After a lengthy argument between counsel for the Ridgewood defendants and plaintiff's counsel, Mr. Ladino admitted to having communications relating to his employment at Ridgewood on a cell phone in his possession. *Id.* 45:22–46:14.

Plaintiff's counsel generally did not explain why he was asking for breaks, although I note that in two of the instances, he advised opposing counsel of his wish to take breaks before turning his video and microphone off. *See id.* 23:9–11; *id.* 58:2–6 (explaining he had a call relating to another matter). He also did not explain that his paralegal was present in the room during plaintiff's deposition, and the transcript makes clear that he forgot to notify defense counsel that she was present. *Id.* 136:9–22.

"It is well settled that it is inappropriate for an attorney to influence or coach a witness during a deposition." *Musto v. Transp. Workers Union of Am.*, No. 03-CV-2325 (DGT) (RML), 2009 WL 116960, at *1 (E.D.N.Y. Jan. 16, 2009) (collecting cases). I am permitted to "impose an appropriate sanction . . . on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Further, EDNY Local Rules prohibit attorneys from

14

"initiat[ing] a private conference with the deponent while a deposition question is pending, except for the purpose of determining whether a privilege should be asserted." E.D.N.Y. Local Civ. Rule 30.4. Plaintiff's counsel's conduct falls within a gray area in Local Rule 30.4 because, although no question was pending, certain of plaintiff's counsel's breaks were taken on short notice while defense counsel was pursuing potentially sensitive questions. *See, e.g.*, Ladino Dep. Tr. 23:3–25:6 (break taken during questions concerning plaintiff's discussion about this lawsuit with current co-workers). It is impossible to tell whether plaintiff's counsel's behavior was intended to disrupt the deposition, was a symptom of the animosity between counsel in this case, or had some other explanation, nor does the record reflect what he and his client spoke about during any of these breaks.

Although I find plaintiff's counsel's somewhat abrupt breaks unprofessional, I do not think it merits the sanction of an adverse inference for two reasons. First, on two of the four challenged occasions, plaintiff's counsel gave opposing counsel advance notice of his intention to take a break. Second, I do not agree with defendants' contention that, following the breaks, plaintiff's responses "were no[] longer as damaging to his claims." Defs.' Mem. 16. Defendants have identified many contradictory statements made by plaintiff during his deposition, many of which came after plaintiff's counsel took breaks, *see id.* at 4–6, and can only speculate as to how much more damaging plaintiff's claims would have been had questioning continued uninterrupted. I do not see the need to grant an adverse inference under these circumstances. Accordingly, the motion for sanctions is denied.

Plaintiff's countermotion is denied; it is apparent from the record that Judge Bulsara previously denied defendants leave to file this sanctions motion but did not reach the merits. *See* Mar. 18, 2022 Dkt. Order.

***Counsel Engaged in Unprofessional Conduct Throughout this Case[1]***

I am deeply disturbed by the conduct of counsel in this case. A review of the docket sheet reveals that the parties engaged in unnecessary motion practice, requiring Judge Bulsara to waste time resolving disputes that almost certainly could have been resolved by two attorneys negotiating in good faith. It further shows that the parties began communicating with hostility as soon as this case entered discovery; a mere three weeks after discovery commenced, Judge Bulsara opined that "[p]laintiff's motion [to compel] and [d]efendants' response indicate that, rather than comply with these [discovery] requirements, counsel have resorted to exchanging hostile emails" and "remind[ed] counsel of their obligations to work cooperatively in discovery and to comport themselves with appropriate decorum." *See* Aug. 3, 2021 Dkt. Order.

Counsel failed to abide by Judge Bulsara's order. Instead, their behavior worsened, and unprofessional behavior and time-wasting motion practice became more frequent. *See, e.g.*, ECF No. 45 at 2 (letter from Ridgewood defendants' counsel to the Court noting that "[p]laintiff's counsel seems not to comprehend how the discovery process works"); ECF No. 50 at 2 (letter from plaintiff's counsel to the Court implying impropriety because "coincidentally" three defense witnesses were no longer available to be deposed on a previously-scheduled date "because it just so happened" that each had to work); ECF No. 50 at 9 (email from Ridgewood defendants' counsel calling a letter from plaintiff "a joke" and telling plaintiff's counsel that subpoena service "is litigation 101, you should know this"); ECF No. 51 at 2 (letter from Ridgewood defendants' counsel to Judge Bulsara stating he was "at awe [*sic*] with how inappropriately [p]laintiff's counsel is handling this case").

---

[1] Throughout this portion of the opinion, "counsel" or "the parties" refers to counsel for the Ridgewood defendants and plaintiff, and the Ridgewood defendants and plaintiff, respectively, unless otherwise indicated. These references should not be construed to mean counsel for Mr. Selamaj.

Seeking to head off further unnecessary disputes, Judge Bulsara entered an order requiring the parties to seek leave of the court before filing any discovery motion. *See* Feb. 22, 2022 Dkt. Order. Despite receiving a second order designed to cut down on motion practice, the parties continued to file motions reflecting a complete breakdown in counsel's communication. Plaintiff sought leave to compel in-person (rather than remote) depositions, *see* ECF No. 54, to compel the Ridgewood defendants to produce non-party witnesses, *see* ECF No. 57, and to compel document production, *see* ECF No. 62. Third-party defendant Selamaj moved for sanctions, *see* ECF No. 55, as did plaintiff, *see* ECF No. 56. Following another letter from plaintiff, Judge Bulsara ordered the parties to meet and confer, then to file a joint letter summarizing remaining discovery issues and their respective positions. *See* Apr. 19, 2022 Dkt. Order.

Regrettably, the joint letter advised Judge Bulsara of trivial discovery disputes and was extremely unprofessional in tone. *See* ECF No. 64 at 2 (advising the Court of a dispute over the $75 cost of repairing plaintiff's cell phone); *id.* at 3 (plaintiff's counsel disclosing, for the first time, intent to take a Rule 30(b)(6) deposition); *id.* at 4 (accusing plaintiff's counsel of "witness tampering"); *id.* at 5 (referring to witness's putative "fear of retaliation and other concerns that would result from [plaintiff's counsel's] subpoena campaign"). In response, Judge Bulsara advised that he "did not give [p]laintiff an open-ended invitation to raise any manner of dispute with the [d]efendants," noting that plaintiff's use of the docket to litigate discovery disputes had become "de rigueur." *See* May 20, 2022 Dkt. Order. As for defendants, Judge Bulsara found that the Ridgewood defendants' position was "flippant, discourteous, and utterly disrespectful to the Court," and that their references to a subpoena "'campaign' reflects a ridiculous, unwarranted attack, particularly since [p]laintiff's counsel is entitled to discovery." *Id.*

Unfortunately, the parties' unprofessional conduct did not end when discovery closed.

17

Defendants' joint motion papers explicitly allege that plaintiff's counsel has misrepresented his client's interests and accuse plaintiff's counsel of falsely attributing statements to his client. *See* Defs.' Reply in Supp. Mot. for Summ. J. 4, ECF No. 89; *see also id.* at 5 (suggesting I question whether "the factual allegations in the [c]omplaint starting this action, and those statements continuing this action came from the [p]laintiff or [p]laintiff's attorney"). Plaintiff avoided making personal attacks in his papers but revived a disingenuous argument that defendants "did not search for responsive documents," Pl.'s Opp'n 5, an allegation that has been corrected on the docket multiple times, *see, e.g.*, ECF No. 48 at 1 (noting that Ridgewood defendants have no documents in their possession). Moreover, the records I reviewed in conjunction with deciding this motion reveal that the attorneys engaged in lengthy and time-wasting personal attacks during depositions. *See, e.g.*, Ladino Dep. Tr. 28:23–29:9, ECF No. 91-1; *id.* 40:16–41:12; *id.* 44:7–16; Cordova Dep. Tr. 8:14–25, ECF No. 74-1; *id.* 11:23–12:9; *id.* 13:10–14:11.

"A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." A.B.A. Model Rules of Pro. Conduct, Preamble ¶ 5. It is apparent that counsel for plaintiff and counsel for the Ridgewood defendants have forgotten this important responsibility. The record contains multiple instances of both lawyers belittling each other's professional skills, casting aspersions on each other's motives in representing their clients, and failing to abide by the Court's discovery orders. One such instance would have been too many. Counsel's conduct resulted in a considerable waste of both my and Judge Bulsara's time and energy refereeing disputes where none should exist.

I will not speculate as to why counsel's relationship with one another has devolved, nor should the parties take this portion of my opinion as endorsing conduct that I have not explicitly addressed. I wish to advise the parties that I will have zero tolerance for counsel's behavior going

18

forward. As this case moves to trial, counsel is reminded to operate with the utmost courtesy and professionalism toward one another and the Court. I will not hesitate to impose sanctions at the first sign of further unprofessional or time-wasting behavior.

## CONCLUSION

In light of the above, the motion for summary judgment in favor of defendants is denied, and the parties' motions for sanctions are denied.

SO ORDERED.

Dated:     April 12, 2023                          _____/s/_____
           Brooklyn, NY                            Allyne R. Ross
                                                   United States District Judge